# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Scott Andrew Kohser,

     Petitioner,

 v.

Connie Roehrich,

     Respondent.

Civil No. 05-3018 (JMR/SRN)

**REPORT AND RECOMMENDATION**

---

  Scott Andrew Kohser, Minnesota Correctional Facility, 1101 Linden Lane, Faribault, Minnesota 55021, pro se

  Elizabeth R. Johnston, Hennepin County Attorney's Office, 300 South Sixth Street, Suite C-2000, Minneapolis, Minnesota 55487, for Respondent

_____

SUSAN RICHARD NELSON, United States Magistrate Judge

  The above-captioned case is before the undersigned United States Magistrate Judge on Petitioner's Application for Habeas Corpus Relief under 28 U.S.C. § 2254 (Doc. No. 47).  The matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and District of Minnesota Local Rule 72.1.  For the reasons set forth below, the Court recommends that Petitioner's application for habeas relief be denied.

## I.   BACKGROUND[1]

Eighty-five year-old Bernice Johnson was home alone one afternoon when she heard her doorbell ring.  As she approached the door, she saw a man outside, moving away from the door. That man was later determined to be Petitioner Scott Andrew Kohser.  Mrs. Johnson later heard a loud noise in her basement and went downstairs to investigate.  She saw the man in the basement and asked him who he was.  The man ran past Mrs. Johnson up the stairs, locked her in the basement, and ransacked her house.  Mrs. Johnson called 911 from a telephone in the basement and described the intruder as "a tall, slim, young white man, wearing blue jeans, a blue-jean jacket, and a dark stocking cap."  State v. Kohser, No. C7-00-1778, 2001 WL 969024, at *1 (Minn. Ct. App. Aug. 28, 2001).  Officer Brandon Deshler responded to the call, and as he neared the house, he saw a man matching the description given by Mrs. Johnson, driving her car away from the house.  Officer Deshler followed the car until it was abandoned during the pursuit, and he then gave chase on foot.  Officer Deshler eventually found the man in a store and arrested him.  The officer brought the man back to Mrs. Johnson's house, and she positively identified him as the intruder.

Petitioner was charged in Hennepin County District Court with one count of burglary in the first degree, one count of false imprisonment, and one count of theft of a motor vehicle.

---

[1] Respondent avers that it attempted to obtain copies of all relevant state proceedings, but the state's file is no longer available.  Respondent further submits that the full record is not necessary to a determination of this case, and where the parties' versions of the record vary, Respondent agrees to be bound by Petitioner's citations to the record and the documents he provided.  Ordinarily, the state court record is essential to address a § 2254 habeas petition, but "the state is not required to perform the impossible."  Pruitt v. Hutto, 574 F.2d 956, 957 (8th Cir. 1978).  The Court finds that the records provided by Petitioner and Respondent's stipulation to be bound by those records satisfies due process.  See id.

Petitioner was appointed a public defender, Melissa Haley, and the case proceeded to a trial by jury.  Four days into the trial, Petitioner moved for a mistrial because the prosecutor had failed to provide him with certain pretrial statements from the victim's husband and another witness.  After learning that defense counsel had also failed to produce some discovery, the court declared a mistrial.

Petitioner retained Steven Meshbesher as his lawyer and waived his right to a jury trial.  The parties agreed to submit the case to the trial judge on stipulated facts.  On June 2, 2000, the court found Petitioner guilty of first degree burglary, theft of a motor vehicle, and fleeing a police officer.  Petitioner was sentenced to 150 months on the burglary conviction.  Petitioner appealed his conviction and sentence to the Minnesota Court of Appeals, which affirmed the trial court.  Petitioner then sought review from the Minnesota Supreme Court, which denied the request for review.  Petitioner also sought post-conviction relief twice in the state courts, in 2003 and 2005, and his petition was denied at each stage.

Meanwhile, Petitioner also filed a habeas petition in federal court on October 24, 2002, in Case No. 02-cv-4168.  Because he improperly included unexhausted claims in the petition, the district court dismissed his petition without prejudice to allow him to exhaust all of his claims in state court before filing a new application for habeas relief.  On December 8, 2005, Petitioner filed a motion in federal court for relief from the order of dismissal in 2002, asking for leave to amend his habeas petition in that case.  The district court ordered that Petitioner's filings would be considered the initial filings in a new civil case and instructed Petitioner to file a habeas petition setting forth his grounds for relief.   Accordingly, the Clerk of Court opened the present action as a new file and closed Case No. 02-cv-4168.

On March 6, 2006, this Court observed that Petitioner had not yet filed an actual habeas petition in this case.  After receiving several chances to do so, Petitioner filed a 199-page petition on March 20, 2007.  This petition was stricken for failure to comply with the requirement that a habeas petition state concisely each ground for relief and the supporting facts. Petitioner then filed an amended habeas petition on October 3, 2007, in compliance with the Court's order.  Respondent responded to the amended petition on March 30, 2008, and Petitioner filed a reply to the response on April 16, 2008.

The amended habeas petition presently before the Court contains thirty claims for relief: (1) that the Department of Corrections confiscated and destroyed Petitioner's original pro se appellate brief and supporting exhibits; (2) that his public defender, Ms. Haley, provided ineffective assistance of counsel at a plea hearing; (3) that his retained counsel, Mr. Meshbesher, provided ineffective assistance of counsel for not arguing Ms. Haley's ineffectiveness; (4) that Mr. Meshbesher provided ineffective assistance of counsel by providing Petitioner with incorrect information regarding the standard of review on appeal in order to force Petitioner to waive his right to a jury trial; (5) that Mr. Meshbesher provided ineffective assistance of counsel by misinforming Petitioner of the exhaustion requirement for habeas claims, thereby causing some claims to be procedurally barred; (6) that Mr. Meshbesher provided ineffective assistance of counsel by misinforming Petitioner of the procedures and laws governing post-conviction petitions; (7) that Mr. Meshbesher provided ineffective assistance of counsel by advising Petitioner that he did not have to object in order to appeal an evidentiary violation; (8) that Mr. Meshbesher provided ineffective assistance of counsel by deliberately ignoring Petitioner's demands that he request a different judge or inform the court of Petitioner's concerns of bias;

4

(9) that Mr. Meshbesher provided ineffective assistance of counsel by failing to challenge the prosecution's affidavits and summaries as inaccurate and unsworn; (10) that Mr. Meshbesher provided ineffective assistance of counsel by not objecting when the sentencing court considered Petitioner's prior convictions in determining his sentence; (11) that Mr. Meshbesher provided ineffective assistance of counsel by failing to argue that the vulnerability of the victim was never proven; (12) that the sentencing court improperly enhanced Petitioner's sentence based on the vulnerability of the victim, which the state failed to prove; (13) that the trial court improperly took "judicial notice" of permanent emotional harm to the victim and departed upward from the guideline sentence; (14) that Mr. Meshbesher provided ineffective assistance of counsel because he was not familiar with all the evidence in the case and lost notes from Petitioner and Ms. Haley; (15) that Mr. Meshbesher provided ineffective assistance of counsel by failing to adequately interview Petitioner and other witnesses; (16) that Mr. Meshbesher provided ineffective assistance of counsel by failing to read all of the transcripts and police reports in preparation for trial, not visiting the suspect's home, and failing to obtain videotapes; (17) that Mr. Meshbesher provided ineffective assistance of counsel because he did not present Petitioner's alibi defense; (18) that the trial judge was biased against Petitioner; (19) that the trial court denied Petitioner equal protection and due process by receiving exhibits that were not admitted into evidence or stipulated to; (20) that police officers deliberately destroyed DNA evidence by forcing a hat on Petitioner's head at a show-up identification; (21) that police officers deliberately destroyed evidence of a shoe print in a window well; (22) that police officers deliberately destroyed evidence by placing Petitioner's clothing on the floor of the jail; (23) that police officers intentionally destroyed and tampered with evidence by mixing

Petitioner's clothing with other clothing in a bag; (24) that police officers destroyed a taped

interview of the victim; (25) that the prosecution violated <u>Brady</u> by withholding exculpatory

notes from an interview at a Canac Store; (26) that the prosecution withheld exculpatory

information from a custodial interrogation at a Sinclair gas station; (27) that the prosecution

withheld exculpatory evidence regarding a telephone call to the owner of Jet Flooring; (28) that

the prosecutor bolstered the credibility of his affidavits and summaries with the reputation of his

office; (29) that the prosecutor goaded Petitioner's request for a mistrial in violation of the

Double Jeopardy Clause; and (30) that Petitioner was denied due process at the show-up

identification procedure.

## II.    DISCUSSION

Habeas relief is available to a state prisoner if "he is in custody in violation of the

Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  The Anti-Terrorism

and Effective Death Penalty Act (AEDPA) limits habeas review to adjudications that:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established federal law, as determined by the Supreme
> Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

<u>Id.</u> § 2254(d).

The United States Supreme Court explained the meanings of the "contrary to" and

"unreasonable application" clauses in <u>Williams v. Taylor,</u> 529 U.S. 362 (2000).  A state court

decision is "contrary to" Supreme Court precedent if it either "arrives at a conclusion opposite

that reached by [the Supreme] Court on a question of law" or "decides a case differently than

th[e] [Supreme] Court has on a set of materially indistinguishable facts."  <u>Id.</u> at 412-13.  A state

court decision is an "unreasonable application" of Supreme Court precedent if it "identifies the correct governing legal principle from th[e] [Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "A federal court may not issue the writ simply because it 'concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" Lyons v. Luebbers, 403 F.3d 585, 592 (8th Cir. 2005) (quoting Williams, 529 U.S. at 411).

In addition, when reviewing a state court decision, "a federal court . . . presumes that the state court's factual determinations are correct." Lee v. Gammon, 222 F.3d 441, 442 (8th Cir. 2000); 28 U.S.C. § 2254(e)(1). This deference applies to factual determinations made by state trial courts and state appellate courts. Sumner v. Mata, 449 U.S. 539, 547 (1981). The petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see Whitehead v. Dormire, 340 F.3d 532, 539 (8th Cir. 2003).

A petitioner must exhaust his state court remedies before presenting claims in a federal habeas petition, and he does so by fairly presenting his federal constitutional claims to the highest available state court. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). A federal claim is fairly presented when the petitioner refers "to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue." McCall v. Benson, 114 F.3d 754, 757 (8th Cir. 1997) (quoting Myre v. State of Iowa, 53 F.3d 199, 200-01 (8th Cir. 1995) (quoting Kelly v. Trickey, 844 F.2d 557, 558 (8th Cir. 1988))). A federal claim has not been fairly presented to a state court "if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the

7

presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." Baldwin v. Reese, 541 U.S. 27, 32 (2004).

If a petition contains claims that have not been fairly presented, the court must determine if those claims are unexhausted or procedurally defaulted. A claim is unexhausted if the claim has not been fairly presented in one complete round of the state's established appellate review process, O'Sullivan, 526 U.S. at 845, but the petitioner has the right under state law to raise the claim by any available procedure, 28 U.S.C. § 2254(c).

A constitutional claim is procedurally defaulted if it has not been fairly presented in the state courts, and the state courts will no longer review it because an independent and adequate state procedural rule precludes further litigation of the claim. Coleman v. Thompson, 501 U.S. 722, 750 (1991). Under Minnesota law, "where direct appeal has once been taken, all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief." State v. Knaffla, 243 N.W.2d 737, 741 (Minn. 1976). There are two exceptions to the Knaffla rule: (1) where a claim is so novel that its legal basis was not reasonably available at the time of direct appeal, or (2) if the defendant did not deliberately or inexcusably fail to raise the issue in the first appeal and fairness requires review. Townsend v. State, 723 N.W.2d 14, 18 (Minn. 2006).

When a claim is procedurally defaulted in state court, the federal habeas court must determine whether the prisoner has demonstrated cause and prejudice for the default, or whether a failure to consider the claim will result in a fundamental miscarriage of justice. McCall, 114 F.3d at 758 (citing Coleman, 501 U.S. at 750.). Prejudice need not be considered where petitioner has failed to fulfill the cause prong of the test. Id. The miscarriage of justice

8

exception is only available to a petitioner who has demonstrated that a constitutional violation

has probably resulted in the conviction of an innocent person.  Id.  If the exceptions do not apply,

the procedural default cannot be excused, and the court will deny the petition without addressing

the merits of the claim.  See Carney v. Fabian, 441 F. Supp. 2d 1014, 1029 (D. Minn. 2006).

A.    The Department of Corrections' Alleged Confiscation and Destruction of
      Petitioner's Pro Se Appellate Brief

Petitioner alleges that the Department of Corrections confiscated and destroyed his pro se

appellate brief in support of his direct appeal, thereby infringing his right of access to the courts.

Petitioner did not raise this claim on direct appeal or in his first petition for post-conviction

relief.  It appears that Petitioner first raised this claim in his appeal of the denial of the first

petition for post-conviction relief.  See Kohser v. State, No. A04-1976, 2005 WL 3370861, at *5

(Minn. Ct. App. Dec. 13. 2005).  The post-conviction appellate court denied the claim because

Petitioner failed to show that the lost brief would have contained relevant, material, or new

evidence.  Id.

Petitioner's claim that he was denied access to the courts fails for several reasons.  First,

Petitioner has not shown that the Department of Corrections actually confiscated and destroyed

his brief.  Second, he was represented by counsel during his direct appeal, who filed a brief on

Petitioner's behalf.[2]  Third, Petitioner acknowledges that he did file a pro se brief, although he

---

[2] Petitioner brought a denial-of-access claim against Department of Corrections officials in a separate 42 U.S.C. § 1983 action.  In recommending denial of that claim, this Court specifically noted that Petitioner was represented by counsel during his direct appeal, which satisfied the requirement of access to the courts in his case.  See Kohser v. Merth, Civil No. 03-6194 (JNE/SRN), Report & Recommendation at 8-9 (D. Minn. filed Sept. 21, 2005), adopted by Civil No. 03-6194 (JNE/SRN), Order at 1 (D. Minn. filed Dec. 27, 2005), aff'd, 250 F. App'x 753, 753-54 (8th Cir. 2007), petition for cert. filed, (U.S. Mar. 31. 2008) (No. 07-10268).

characterizes the fifty-five page brief and 195 attached exhibits as "an insufficient mock-up prepared by" his "legal assistant."  (Am. Pet. at 5.)  Finally, Petitioner has not shown "that he suffered an actual injury or prejudice as a result of the alleged denial of access."  See Johnson v. Hamilton, 452 F.3d 967, 973 (8th Cir. 2006); see also Kohser v. Merth, Civil No. 03-6194 (JNE/SRN), Report & Recommendation at 9 (D. Minn. filed Sept. 21, 2005), adopted by Civil No. 03-6194 (JNE/SRN), Order at 1 (D. Minn. filed Dec. 27, 2005), aff'd, 250 F. App'x 753, 753-54 (8th Cir. 2007), petition for cert. filed, (U.S. Mar. 31. 2008) (No. 07-10268) (finding that Plaintiff's claim of inadequate access to the courts failed as a matter of law).  In sum, Petitioner has not shown that the post-conviction appellate court's decision was contrary to or unreasonably applied clearly established federal law, or that the decision was based on an unreasonable determination of the facts.

### B.      Ineffective Assistance of Counsel

#### 1.      The Claim Against Ms. Haley

Petitioner argues that Ms. Haley was ineffective because she failed to accurately relate and preserve a plea offer.  Petitioner did not raise this claim on direct appeal.  (Doc. No. 20, Exs. 206, 257-60, 318-19, 334-35); see also Kohser, 2001 WL 969024, at *6.  Although Petitioner mentioned the plea negotiations in the facts section of his first post-conviction petition, he did not list the issue as an actual claim, nor did he present the federal nature of the claim in that proceeding.  (Id. Exs. 357-59, 368-77.)  Additionally, Petitioner raised numerous arguments pertaining to the effectiveness of his counsel on direct appeal and in his first post-conviction petition, but he did not specifically assert that Ms. Haley was ineffective because she failed to accurately present and preserve a plea offer.

A petitioner who makes specific ineffectiveness claims in the state courts does not, merely by doing so, sufficiently present all possible variations on which he may later seek federal habeas review. Flieger v. Delo, 16 F.3d 878, 885 (8th Cir. 1994). Because Petitioner did not raise the claim on direct appeal and did not alert the post-conviction court to the federal nature of his claim, he failed to fairly present this claim to the state courts. The claim is not unexhausted because Petitioner has no right under state law to raise the claim now. Indeed, the Knaffla rule would bar Petitioner from raising the issue, and neither of the Knaffla exceptions applies. Consequently, this claim is procedurally defaulted. Petitioner has shown neither cause and prejudice for the default nor that a fundamental miscarriage of justice would result if the Court does not consider the claim, and habeas relief is therefore not available.

Even if Petitioner's claim were not procedurally defaulted, it would fail on the merits. Petitioner has not shown that Ms. Haley's representation fell below an objective standard of reasonableness or that any deficiencies in her performance were prejudicial. See Strickland v. Washington, 466 U.S. 668, 688, 694 (1984). To demonstrate prejudice, Petitioner must show a reasonable probability that but for his counsel's unprofessional errors, the outcome of the proceeding would have been different. Id.

The transcript of the pretrial conference shows that the prosecutor had initially offered a seventy-four month sentence in exchange for Petitioner's plea of guilty. (Doc. No. 20, Ex. 735.) Petitioner rejected the plea offer because he believed there were other ongoing investigations against him, and he wanted to resolve all possible matters at once. (Id. Ex. 736.) Although a portion of the transcript is missing from the record, the transcript next reflects that at some point, the prosecutor withdrew the initial plea offer and made a new offer of 121 months. (Id. Exs.

11

736-77.) Ms. Haley told the court that Petitioner had "misunderstood that the 74-month offer

that was communicated at the pretrial was withdrawn after that pretrial conference.  He asked

that I communicate to the prosecutor that he would be willing to accept that offer of 74 months.

My understanding is the State will not accept that today." (Id. Ex. 737.)  Petitioner does not

assert that Ms. Haley encouraged him to reject the first plea offer, or that she had any control

over the State's withdrawal of the offer.  On the other hand, Petitioner acknowledges in his

petition that Ms. Haley told him the initial plea offer could be withdrawn.  (Am. Pet. at 5.)  Thus,

Ms. Haley's representation was not objectively unreasonable, and she bears no responsibility for

any prejudice resulting from the withdrawal of the first plea offer.

### 2.     Claims Against Mr. Meshbesher

Petitioner raises thirteen claims of ineffective assistance of counsel against Mr.

Meshbesher, who was Petitioner's lawyer during the second trial and for the direct appeal.

### a.     Failure to Challenge Ms. Haley's Effectiveness

In ground three of the amended petition, Petitioner claims that Mr. Meshbesher provided

ineffective assistance of counsel by not challenging Ms. Haley's effectiveness on appeal.

Petitioner raised this claim in his first post-conviction petition, and the Court will consider it

exhausted.  The Minnesota Court of Appeals upheld the post-conviction court's denial of the

claim, noting that appellate counsel is entitled to deference in matters of strategy.  Kohser, 2005

WL 3370861, at *4.

Petitioner has not shown that the state appellate court's decision was contrary to or an

unreasonable application of established Supreme Court precedent, nor was it based on an

unreasonable determination of the facts.  This Court has already found that Petitioner failed to

12

establish that Ms. Haley was ineffective in the plea negotiation process.  Accordingly, Mr.

Meshbesher's decision not to raise Ms. Haley's effectiveness on appeal did not fall below an

objective standard of reasonableness.  Furthermore, Petitioner has not shown a reasonable

probability that but for Mr. Meshbesher's failure to challenge Ms. Haley's effectiveness, the

outcome of his appeal would have been different.

### b.    Legal Advice Regarding the Standard of Review on Appeal

Petitioner next asserts in ground four of the amended petition that Mr. Meshbesher gave

him incorrect legal advice in order to force him to waive his right to a jury trial.  According to

Petitioner, Mr. Meshbesher said that if Petitioner waived his right to a jury trial, the state

appellate courts would not consider any of the trial court's credibility findings to be correct.

Petitioner did not raise this claim on direct appeal.  (Doc. No. 20, Exs. 203-60, 306-22.)  The

claim is procedurally defaulted because Petitioner knew of the underlying facts at the time he

directly appealed but failed to raise it in that proceeding.  The claim would now be barred under

Knaffla, and neither exception applies.  Habeas relief is foreclosed because Petitioner has shown

neither cause and prejudice for the default nor that a fundamental miscarriage of justice would

result from procedurally dispensing with the claim.

Even if Petitioner's claim were not procedurally defaulted, it would fail on the merits

because Petitioner has not shown either that Mr. Meshbesher's representation was deficient or

that he was prejudiced by the representation.  Even assuming Mr. Meshbesher misrepresented

the standard of review on appeal, Petitioner has not shown that the outcome of the bench trial

would have been different, or for that matter, that the outcome of a jury trial would have been

different.  Moreover, the Court cannot conclude from the record that it was unreasonable for Mr.

Meshbesher to recommend a bench trial over a jury trial.  In a post-trial letter to Petitioner, Mr.

Meshbesher wrote, "it was my opinion that proceeding to a jury trial in this case would have

been disastrous.  My opinions were based on the evidence against you and my experience with

criminal trials."  (Doc. No. 20, Ex. 436.)

### c.      Legal Advice Regarding Collateral Relief Procedures

In ground five, Petitioner asserts that Mr. Meshbesher misinformed him of the exhaustion

requirement for habeas claims, thereby causing some claims to be procedurally barred.

Relatedly, in ground six, Petitioner contends that Mr. Meshbesher misinformed him of the

procedures and laws governing post-conviction petitions.  These claims are apparently based on

two letters sent from Mr. Meshbesher to Petitioner in 2002, after the trial and direct appeal.

(Am. Pet. at 6; Doc. No. 20, Exs. 435-36, 442-43.)

The only alleged misrepresentation pertaining to the collateral review process raised in

Petitioner's first post-conviction petition was that Mr. Meshbesher said it was permissible to

present constitutional issues to the federal courts that were not presented to the state courts.

(Doc. No. 20, Ex. 376.)  All other such claims are therefore procedurally defaulted, as Petitioner

did not fairly present them to the state courts, and Knaffla would now preclude consideration.

Petitioner has not shown that the default should be excused, and federal habeas review of those

claims is accordingly barred.

Even if the Court were to reach the substance of the procedurally defaulted claims, those

claims, as well as the exhausted claim, lack merit.  "There is no constitutional right to an

attorney in state post-conviction proceedings," Coleman, 501 U.S. at 752, and "where there is no

constitutional right to counsel there can be no deprivation of effective assistance," Simpson v.

14

Norris, 490 F.3d 1029, 1033 (8th Cir. 2007) (citing Wainwright v. Torna, 455 U.S. 586, 587-88

(1982) (per curiam)).  The habeas statute itself provides, "[t]he ineffectiveness or incompetence

of counsel during Federal or State collateral post-conviction proceedings shall not be a ground

for relief in a proceeding arising under" this section.  28 U.S.C. § 2254(i).  Consequently, Mr.

Meshbesher's representations made to Petitioner in 2002 regarding his post-conviction and

habeas petitions cannot constitute ineffective assistance of counsel under the Sixth Amendment.

Even if grounds five and six were cognizable on federal habeas review, Petitioner has not

presented any credible evidence of Mr. Meshbesher's supposed misrepresentations.  There is

nothing in the record before the Court, other than Petitioner's unsubstantiated allegations, that

Mr. Meshbesher misrepresented the procedure or the law pertaining to collateral review or, for

that matter, direct appeals.  In support of the one claim Petitioner did raise to the post-conviction

court, he cited to the two letters from Mr. Meshbesher.  Having reviewed those letters, however,

the Court finds they provide no factual support for Petitioner's claims.

### d.      Legal Advice Regarding Objections

Turning to the seventh claim for relief, Petitioner alleges that Mr. Meshbesher provided

ineffective assistance of counsel by advising him that no objection was necessary in order to

appeal an evidentiary violation on due process grounds.  Petitioner did not present this claim on

direct appeal (Doc. No. 20, Exs. 206, 318-19); Kohser, 2001 WL 969024, at *6, and it is now

procedurally defaulted because the state courts would no longer review it, in accordance with

Knaffla.  Petitioner has not shown cause and prejudice for the default, or that failing to consider

the claim would result in a miscarriage of justice.

Even if the claim were not procedurally defaulted, it would be subject to denial because it

lacks merit.  Petitioner has not shown that Mr. Meshbesher's legal advice regarding the preservation of objections was objectively unreasonable, or that but for the advice the outcome of the trial would have been different.

Insofar as ground seven could be perceived as a challenge to Mr. Meshbesher's actual failure to object, it appears that Petitioner is arguing that Mr. Meshbesher should have objected to the trial court's consideration of a hat, gloves, clothing, and some glass fragments.  (Am. Pet. at 7;  Doc. No. 20, Exs. 351, 380.)  Petitioner did not raise this claim in his direct appeal, and it is now procedurally defaulted under Knaffla because the state courts would no longer review it. See Kohser v. State, No. A06-1017, 2007 WL 1753537, at *3 (Minn. Ct. App. June 19, 2007). Petitioner has not shown cause and prejudice for the default, or that failing to consider the claims would result in a miscarriage of justice.

Even if the Court were to reach the merits, the claim would fail.  After the mistrial was declared, the parties agreed to a bench trial on stipulated facts and created a list of stipulated evidence.  After this list was created, the parties agreed to add the hat, gloves, clothing, and glass fragments to the evidence before the court.  Petitioner has not explained on what basis Mr. Meshbesher should have objected to the evidence, and he has not otherwise shown that the failure to object was unreasonable.  Petitioner also has not shown that but for the failure to object, the outcome of the bench trial would have been different.

### e.   Judicial Bias

In ground eight, Petitioner asserts that Mr. Meshbesher was ineffective because he ignored Petitioner's demands for a different judge and did not inform the court of Petitioner's concern that the judge was biased.  Petitioner did not bring this claim on direct appeal (Doc. No.

16

20, Exs. 206, 318-19); <u>Kohser</u>, 2001 WL 969024, at *6, but he did raise it in his first petition for post-conviction relief (Doc. No. 20, Exs. 372-73).  The post-conviction court specifically declined to address the claim because Petitioner failed to raise it on direct appeal.  <u>Kohser</u>, 2005 WL 3370861, at *4.  Thus, the claim is procedurally defaulted because the state courts have refused to review it.  Petitioner has not shown cause and prejudice for the default, nor has he shown that failing to consider the claim would result in a miscarriage of justice.  Consequently, habeas review of this claim is barred.

Alternatively, the claim fails on the merits.  Petitioner has not shown that Mr. Meshbesher's failure to seek removal of the trial judge was objectively unreasonable or that if the judge had been removed, the outcome of his case would have been different.  Moreover, as the Court discusses in Part II.E below, Petitioner has not shown that the trial judge was actually biased, or that Petitioner was prejudiced by any such bias.

### f.    The Prosecution's Affidavits and Summaries

Petitioner next contends in ground nine of his amended petition that Mr. Meshbesher provided ineffective assistance of counsel because he did not challenge the prosecution's affidavits and summaries as being inaccurate and unsworn.  In his direct appeal, Petitioner challenged his counsel's failure to "cross-examine pretrial statements" (Doc. No. 20, Ex. 206), which the Court will construe as tantamount to the claim brought in ground nine.  The Minnesota Court of Appeals found that all of Petitioner's ineffective assistance of counsel claims, including this one, were no more than "argumentative assertions without factual support."  <u>Kohser</u>, 2001 WL 969024, at *6.  That court further found that Petitioner had not shown that a different outcome would have occurred but for the alleged deficiencies in his counsel's performance.  <u>Id.</u>

Although the court relied on state law in resolving this ineffectiveness claim, the standard it applied is identical to that stated by the United States Supreme Court. Id.; see Strickland, 466 U.S. at 688, 694. Thus, the only issue for the Court "is whether the application of that standard to [Petitioner's] claim was unreasonable." Nelson v. Hvass, 392 F.3d 320, 323 (8th Cir. 2004) (citing 28 U.S.C. § 2254(d)(1)) (addressing an ineffective assistance of counsel claim under Strickland in the context of a § 2254 petition). The Court concludes it was not unreasonable, for several reasons.

First, Petitioner has not explained why the affidavits and summaries were inadmissible. Even if other evidence contradicted the affidavits and summaries, Mr. Meshbesher was not necessarily obligated to object to them. Second, Petitioner does not explain how Mr. Meshbesher's failure to object violated clearly established Supreme Court precedent. His memorandum supporting his petition focuses on Ms. Haley's conduct in the first trial, but the instant claim is brought with respect to Mr. Meshbesher, not Ms. Haley. Third, the witness summaries were not included in the stipulated evidence submitted to the trial court for the second trial, and Petitioner has not shown that they were in fact considered by that court. Indeed, Petitioner has cited only to excerpts from the transcript of the first trial, not the second. (Doc. No. 50 at 15-22; Doc. No. 70, Exs. 63-73.)

Finally, with particular respect to the affidavits, Petitioner is challenging the affidavits of the prosecutor, Mr. Keeler, and Ms. Kyro, an investigator, which were received as court exhibits in the first trial. The affidavits were prepared at the direction of the court to aid the court in assessing the seriousness of the Brady issues that arose mid-trial. (Doc. No. 70, Exs. 64, 67.) After the court reviewed the affidavits and other evidence and heard argument on the

18

withholding of evidence by both sides, the court declared a mistrial based on the "complete

breakdown of discovery on both sides of the fence."  (Doc. No. 70, Ex. 71.)  Considered in the

appropriate context, Mr. Meshbesher committed no error by failing to object to the existence of

these affidavits in the record.  The affidavits were prepared at the direction of the court and for

an administrative, not an evidentiary, purpose.  Mr. Meshbesher's performance in this respect

was not objectively unreasonable, nor has Petitioner shown that the outcome of his second trial

would have been different but for the inclusion of the affidavits in the record.

In sum, Petitioner has not shown that Mr. Meshbesher's failure to object to the

prosecution's affidavits and summaries was objectively unreasonable or that a different outcome

would have resulted but for the lack of objections.  Thus, the Minnesota Court of Appeals did

not unreasonably apply the Strickland standard to Petitioner's claim.

g.      **Sentencing Issues**

In grounds ten and eleven, Petitioner argues that Mr. Meshbesher was not effective

because he failed to object to the sentencing court's consideration of prior convictions and failed

to argue that the vulnerability of the victim had not been proven.  On direct appeal, the

Minnesota Court of Appeals affirmed the district court's determination that Petitioner's

extensive criminal history meant that he is a danger to public safety.  Kohser, 2001 WL 969024,

at *5.  The court also noted that the victim's age and vulnerability were aggravating factors

under the sentencing guidelines, which alternatively supported a finding of danger to public

safety and justified an upward departure.  Id. at **5-6.

Dispensing with the exhaustion requirement, see 28 U.S.C. § 2254(b)(2) ("An application

for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the

applicant to exhaust the remedies available in the courts of the State."), both of these claims fail on the merits because Petitioner has not shown either that his lawyer's failure to object to the findings at the trial level was less than reasonable, or that but for the alleged error his sentence would have been different.  As to Petitioner's prior convictions, the sentencing court departed upward from the presumptive guidelines sentence upon finding that Petitioner was a danger to public safety.  Petitioner has one prior theft conviction, two prior convictions for receiving stolen property, two prior burglary convictions, one prior conviction for attempted burglary, and one prior conviction for escape with force or violence, in addition to numerous convictions for driving under the influence, providing false information, and obstructing legal process. Petitioner's prior record amply supports the trial court's finding that he is a danger to public safety, and his counsel's decision not to object to this finding was therefore reasonable.

Regarding Petitioner's claim that the vulnerability of the victim was not proven, it appears that Petitioner is arguing that he was entitled to a jury finding on this fact.  In Blakely v. Washington, the United States Supreme Court held that a defendant has the right to have a jury determine the existence of any fact, other than the fact of a prior conviction, that increases his sentence above the maximum authorized by the facts supporting the jury's verdict or admitted by the defendant.  542 U.S. 296, 303-04 (2004).  However, Blakely does not apply to Petitioner's case because his conviction was final prior to Blakely, and Blakely is not applied retroactively. See United States v. Stoltz, 149 F. App'x 567, 568 (8th Cir. 2005).  Accordingly, Mr. Meshbesher's decision not to challenge the sentencing court's finding of victim vulnerability was reasonable.

**h.      Preparedness at Trial**

In grounds fourteen, fifteen, and sixteen, Petitioner contends that Mr. Meshbesher

provided ineffective assistance of counsel because he did not adequately prepare for trial in

various respects.  Petitioner alleges in ground fourteen that Mr. Meshbesher was not familiar

with all of the evidence in the case and that he lost notes from Petitioner and Ms. Haley.

Petitioner alleges in ground fifteen that Mr. Meshbesher did not adequately interview Petitioner

and other witnesses.  Petitioner alleges in ground sixteen that Mr. Meshbesher failed to read all

of the transcripts and police reports in preparation for trial, did not visit the suspect's home, and

did not obtain videotapes.  Petitioner presented these claims on direct appeal, and they are

exhausted.

The Minnesota Court of Appeals characterized Petitioner's unpreparedness claims as

"argumentative assertions without factual support."  Kohser, 2001 WL 969024, at *6.  The court

also determined that Petitioner had not established that a different outcome would have occurred

but for his counsel's performance.  Id.  In its discussion, the state appellate court identified and

applied the Strickland ineffectiveness standard, and thus, this Court need determine only whether

the court unreasonably applied the standard to Petitioner's claims.

There is simply no factual support for Petitioner's claims that Mr. Meshbesher was not

prepared at trial.  This portion of his amended petition, despite consisting of more than two

pages, contains only unsupported allegations with no citations to the record.  (Am. Pet. at 9-11.)

Although Petitioner cites to numerous exhibits in his supporting memorandum (Doc. No. 50 at

23-37), these exhibits have no relevance to the issue of counsel's preparedness at trial.  Rather,

they pertain to allegations that Mr. Meshbesher was unable to provide Petitioner's entire file to

21

him <u>after</u> the trial and appeal process had concluded (Doc. No. 20, Exs. 675-76, 926-28); that

Mr. Meshbesher's office was unable to locate the original retainer agreement (<u>id.</u> at 810); and

that Petitioner believed some transcript pages and evidence were not provided to the court of

appeals (<u>id.</u> at 806-07).  As to Petitioner's belief that Mr. Meshbesher did not adequately

interview some witnesses and failed to interview other key witnesses altogether, Petitioner offers

only speculation as to what the witnesses would have testified to.  Even assuming that the

desired testimony would have been elicited, he has not demonstrated that the testimony would

have resulted in a different outcome.

With particular respect to Petitioner's claim that Mr. Meshbesher did not adequately

interview him, Petitioner accuses Mr. Meshbesher of failing to interview him until just days

before trial and that they only discussed the retainer agreement.  These unsupported allegations

tend to show only that Petitioner was dissatisfied with Mr. Meshbesher's litigation strategy.

They do not establish either that Mr. Meshbesher's performance was actually unreasonable or

that his performance in fact prejudiced Petitioner.  The question of Petitioner's guilt was

submitted to the trial court on stipulated facts, and Petitioner does not aver that he would have

told Mr. Meshbesher anything to alter those facts.  Finally, Petitioner's description of the

meeting is inconsistent with his first petition for post-conviction relief, in which he describes

several substantive topics of conversation with Mr. Meshbesher.  (Doc. No. 20, Exs. 365-67.)

### i.      Failure to Present Alibi Defense

Petitioner's last claim of ineffective assistance of counsel against Mr. Meshbesher is that

he did not present Petitioner's alibi defense to the court.  Petitioner raised this argument in his

first post-conviction petition (Doc. No. 20, Ex. 375), which was denied as procedurally barred

because Petitioner knew about the claim but failed to raise it on direct appeal, <u>Kohser</u>, 2005 WL 3370861, at *4.  The claim is therefore procedurally defaulted on habeas review, and Petitioner has shown no excuse for the default.

Even if Petitioner's claim were not procedurally defaulted, it would fail on the merits because Petitioner has not shown that Mr. Meshbesher's representation fell below an objective standard of reasonableness or that he was prejudiced by his counsel's performance.  The habeas petition itself does not even specify what Petitioner's alibi might have been.  The memorandum in support of the petition is of no assistance, stating only that "Meshbesher did not pursue Kohser's only defense pursuant to the 'glass particle' on Kohser's clothing.  He did not pursue an 'alibi' defense.'"  (Doc. No. 50 at 38.)  Given the weakness of this "alibi," the Court cannot conclude that it was unreasonable for Mr. Meshbesher not to offer alibi testimony.  Even assuming Mr. Meshbesher acted unreasonably, Petitioner has not shown that the outcome of his trial would have been different had an alibi had been presented.

### C.      Enhancement of Petitioner's Sentence

In ground twelve of the amended petition, Petitioner asserts that the sentencing court improperly enhanced his sentence because the state failed to prove the vulnerability of the victim, in violation of due process.  As the Court explained above in Part II.B.2.g, Petitioner was not entitled to a jury finding that the victim was vulnerable because his conviction was final prior to <u>Blakely</u>.  The sentencing court appropriately decided from the record before it that the victim's age and vulnerability were aggravating factors under the sentencing guidelines and departed upward accordingly.  Moreover, the vulnerable victim enhancement was presented only as an alternative to the actual basis for enhancement, which was the court's finding that

23

Petitioner is a danger to public safety because of his lengthy involvement in criminal activity.

Petitioner has not identified any evidence, much less clear and convincing evidence, that the victim in this case was not vulnerable.  The Court concludes that the sentencing court did not unreasonably determine that she was vulnerable, in light of the evidence presented at trial. Furthermore, Petitioner has not shown that the decision to sentence him under the repeat offender statute was contrary to or involved an unreasonable application of clearly established Supreme Court precedent.

> **D.      Whether the Trial Court Improperly Considered Permanent Emotional Harm to the Victim in Departing Upward from the Guideline Sentence**

In ground thirteen of the amended petition, Petitioner contends that the trial court improperly "took judicial notice of non-record facts," such as permanent emotional harm to the victim, in departing upward from the sentencing guidelines.  (Am. Pet. at 9.)  Petitioner did not address this claim in his memorandum in support of his petition and only briefly addressed it in his reply to Respondent's response.  To determine the legal basis for this claim, the Court has therefore looked to the exhibits cited by Petitioner in his habeas petition, particularly to his second petition for post-conviction relief.  (Am. Pet. at 9; Doc. No. 20, Exs. 1275-76.)  In that document, Petitioner relied on Apprendi v. New Jersey, 530 U.S. 466 (2000), and argued that he was entitled to a jury finding beyond a reasonable doubt that the victim was in extreme fear and would never again feel secure in her home.  (Doc. No. 20, Exs. 1274-77.)

The Minnesota Court of Appeals held that Apprendi provided no relief to Petitioner because his sentence of 150 months did not exceed the statutory maximum of 240 months. Kohser, 2007 WL 1753537, at *2.  The court also held that Blakely v. Washington, 542 U.S. 296

24

(2004), was not applicable because that case was not decided until long after Petitioner's direct appeal process had concluded.  Kohser, 2007 WL 1753537, at *2.  The court explicitly rejected Petitioner's argument that Blakely dates back to Apprendi because Blakely does not apply retroactively.  Id.

The Court finds that the Minnesota Court of Appeals correctly applied the law of Blakely and Apprendi to Petitioner's case.  The Supreme Court held in Apprendi that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  530 U.S. at 490.  Here, Petitioner was not sentenced beyond the prescribed statutory maximum.  In 2004, the Supreme Court decided Blakely, holding that a defendant has the right to have a jury determine the existence of any fact, other than the fact of a prior conviction, that increases his sentence above the maximum authorized by the facts supporting the jury's verdict or admitted by the defendant.  542 U.S. at 303-04.  As previously discussed, Blakely does not apply to Petitioner's case because his conviction was final prior to Blakely, which is not applied retroactively.  See Stoltz, 149 F. App'x at 568.

### E.    Whether the Trial Judge Was Biased Against Petitioner

Petitioner's claim of judicial bias, raised in ground eighteen of the petition, is related to ground eight, in which Petitioner asserted his counsel was ineffective for failing to request a different trial judge or voice Petitioner's concern that the judge was biased.  As with the ineffectiveness claim, Petitioner did not argue judicial bias on direct appeal.  See Kohser, 2001 WL 969024.  Petitioner first raised the claim in his first petition for post-conviction relief.  The post-conviction court declined to address it because Petitioner knew about the claim before his

direct appeal but failed to raise it then.  Kohser, 2005 WL 3370861, at *4.  The claim is therefore

procedurally defaulted because the state courts have refused to review it on procedural grounds.

Petitioner has not shown cause and prejudice for the default, nor has he shown that failing to

consider the claim would result in a miscarriage of justice.  Accordingly, habeas review of this

claim is barred.

If the Court were to reach the merits of the claim, it would fail because Petitioner has not

shown that the trial judge should have recused or been disqualified for bias.  As stated by the

Supreme Court,

> The judge who presides at a trial may, upon completion of the evidence, be
> exceedingly ill disposed towards the defendant, who has been shown to be a
> thoroughly reprehensible person.  But the judge is not thereby recusable for bias
> or prejudice, since his knowledge and the opinion it produced were properly and
> necessarily acquired in the course of the proceedings, and are indeed sometimes
> (as in a bench trial) necessary to completion of the judge's task.

Liteky v. United States, 510 U.S. 540, 550-51 (1994).  A judge's opinions "do not constitute a

basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism

that would make fair judgment impossible."  Id. at 555.  Remarks by a judge that are critical,

disapproving, or even hostile to a party ordinarily do not support a claim of bias.  Id.  Similarly,

a judge may express impatience, annoyance, and anger "within the bounds of what imperfect

men and women . . . sometimes display."  Id. at 555-56.  On federal habeas review, a petitioner

must show that "the judge was actually biased or prejudiced against" him.  Dyas v. Lockhart,

705 F.2d 993, 996 (8th Cir. 1983).  The test is whether, "considering psychological tendencies

and human weaknesses, the judge would be unable to hold the proper balance between the state

and the accused."  Id. at 996-97.  In applying the test, a habeas court must "presume the honesty

and integrity of those serving as judges."  Id. at 997.

In the present case, Petitioner has failed to demonstrate that the trial judge was actually biased or prejudiced against him.  Although the judge may have made such comments as "you don't fool me, Mr. Kohser," such statements do not indicate that the judge was not able maintain a proper balance between Petitioner and the state or that the judge had predetermined Petitioner's guilt.  Rather, the judge was merely expressing impatience or annoyance within the bounds of what an ordinary person might do.

**F.      Whether the Trial Court Improperly Considered Certain Exhibits**

Petitioner asserts in ground nineteen of his amended petition that he was denied equal protection and due process when the trial court considered exhibits that were not introduced or stipulated to.  Petitioner did not raise this issue on direct appeal, Kohser, 2001 WL 969024, but in his first petition for post-conviction relief.  The post-conviction court explicitly refused to decide the claim because Petitioner knew about it before his direct appeal but failed to raise it in that proceeding.  Kohser, 2005 WL 3370861, at *4.  The claim is therefore procedurally defaulted.  Petitioner has not shown cause and prejudice for the default, nor has he shown that failing to consider the claim would result in a miscarriage of justice.  Consequently, habeas review of this claim is barred.

If the Court were to reach the merits of Petitioner's claim, it would likewise fail.  In addition to the stipulated evidence, the trial court also received a hat, gloves, clothing, and glass fragments.  However, there is no indication that Petitioner's lawyer objected to the court's receipt of the evidence, and indeed, Petitioner has asserted that his counsel was ineffective for failing to do so.  In addition, Petitioner has not explained on what grounds the exhibits were inadmissible.

27

### G.     Deliberate Destruction of Evidence

In grounds twenty through twenty-four, Petitioner contends that police officers deliberately destroyed DNA evidence by forcing a hat on his head at a show-up identification procedure, that officers deliberately destroyed evidence of a shoe print in a window well, that officers deliberately destroyed evidence by placing Petitioner's clothing on the floor of the jail, that officers intentionally destroyed and tampered with evidence by mixing Petitioner's clothes with another person's clothes, and that officers destroyed a taped interview of the victim.

Although Petitioner mentioned some of these issues in his pro se appellate brief (Doc. No. 20, Exs. 205-07), he did not refer to a specific federal constitutional right or provision, a federal case involving such a right or provision, or a state case raising a federal constitutional issue.  Indeed, he did not refer to any law at all.  The Court finds that the destruction of evidence claims are procedurally defaulted because they were not fairly presented in the state courts, and the state courts would no longer review the claims.  The Minnesota Court of Appeals implicitly rejected all grounds raised by Petitioner in his pro se appellate brief in Kohser, 2001 WL 969024, at *6.  Neither exception to the Knaffla rule applies.  Petitioner has not demonstrated cause and prejudice for the default or that the failure to consider the claims would result in a fundamental miscarriage of justice.  Habeas review is accordingly barred.

 If the Court were to reach the merits, the claims would fail because Petitioner has not shown that his right to due process was compromised by any destruction or alteration of evidence.  "[T]he state's failure to preserve evidence does not constitute a denial of due process unless the state acted in bad faith, the evidence had apparent exculpatory value[,] and comparable exculpatory evidence was not reasonably available to the defendant."  United States

v. Malbrough, 922 F.2d 458, 463 (8th Cir. 1990) (citing California v. Trombetta, 467 U.S. 479,

488-89 (1984)).  Petitioner has not shown that the officers acted in bad faith or that the allegedly

destroyed evidence was truly exculpatory.

     **H.**    **Alleged <u>Brady</u> Violations**

In grounds twenty-five, twenty-six, and twenty-seven, Petitioner asserts that the

prosecutor violated <u>Brady</u> by withholding exculpatory evidence obtained during interviews at a

Canac Store and a Sinclair gas station, and from a telephone call to the owner of Jet Flooring.

These claims were included in Petitioner's <u>pro se</u> appellate brief but were summarily denied by

the Minnesota Court of Appeals.

"[T]he suppression by the prosecution of evidence favorable to an accused upon request

violates due process where the evidence is material either to guilt or to punishment, irrespective

of the good faith or bad faith of the prosecution."  <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963).

"Material" means "there is a reasonable probability that, had the evidence been disclosed to the

defense, the result of the proceeding would have been different."  <u>United States v. Bagley</u>, 473

U.S. 667, 682 (1985).  A court should consider all of the withheld evidence in combination to

determine if it is material.  <u>See</u> <u>Kyles v. Whitley</u>, 514 U.S. 419, 436-37 (1995).

Petitioner is not entitled to habeas relief for the alleged <u>Brady</u> violations for several

reasons.  First, he has not explained how the evidence is exculpatory.  His amended petition does

not specify any particular facts from the interviews or telephone call or articulate why those facts

would be exculpatory.  (Am. Pet. at 14.)  His memorandum in support of the amended petition,

which consists of only a paragraph, refers the Court to Exhibits 387-88 and 255-57.  However,

these exhibits relate to the <u>Brady</u> issues of the first trial, which were remedied by granting

Petitioner's motion for a mistrial. Second, from the exhibits cited in the amended petition, it appears that Petitioner thought the investigating officers should have examined his cell phone records to determine whether he made phone calls to his family members and employer near the time of the burglary.  Even if this evidence was exculpatory, however, it was available to Petitioner at the time of his second trial.  Finally, Petitioner has not shown that any of the withheld evidence was material and would have changed the outcome of his second trial.

## I.     Bolstering of Evidence

Petitioner avers in ground twenty-eight of the amended petition that prosecutors improperly bolstered the credibility of affidavits and summaries with the reputation of their office.  Such conduct by a prosecutor is prohibited only if it "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  Pederson v. Fabian, 491 F.3d 816, 829 (8th Cir. 2007) (quotations omitted).  The first statement Petitioner challenges occurred during the first trial when the attorneys were discussing the Brady issues with the court in a bench conference.  The prosecutor, Mr. Keeler, said:

> Well Your Honor, the State hasn't had the benefit of calling Ms. Kyro, who was a witness to this conversation, and I will, as an officer of the court, represent to this Court that I don't ever remember Mr. Johnson even coming close to characterizing that it was impossible for the first person he saw to have been the person who was ultimately arrested by Officer Deshler.

(Doc. No. 70, Ex. 81.)  Mr. Keeler made another, similar statement later in the conference.  (Id. Ex. 82.)   The Court finds that Mr. Keeler neither bolstered nor discredited any evidence by making these statements.  He merely stated his ethical obligation to be truthful to the court, an obligation all practicing lawyers have.  Moreover, the statements did not infect the trial with any unfairness.

The second category of statements submitted by Petitioner are statements made by another prosecutor, Ms. Johnston, during oral argument on the <u>Brady</u> issues.  Ms. Johnston referred to Mr. Keeler as an "honorable prosecutor who does not play loose with the rules" and urged the court to consider Mr. Keeler's "conduct in this case and other cases" in determining whether he deliberately withheld exculpatory material.  (<u>Id.</u> Exs. 86, 89.)  These comments, which were made during an oral argument to the court and out of the jury's presence, did not infect the trial with any unfairness.  Ms. Johnston was merely defending her office's discovery production to the court.  This Court finds that the prosecutors did not bolster, improperly or otherwise, the credibility of affidavits and summaries with the reputation of their office.

**J.      The Prosecutor's Influence on Petitioner's Request for a Mistrial**

Petitioner asserts in ground twenty-nine that he was retried  in violation of the Double Jeopardy Clause.  The Minnesota Court of Appeals reviewed this claim on direct appeal.  That court stated, "when a criminal trial is terminated at a defendant's request, the Double Jeopardy Clause bars a second trial only if the mistrial resulted from governmental misconduct intended to goad the defendant into requesting the mistrial."  <u>Kohser</u>, 2001 WL 969024, at *4.  The appellate court upheld the trial court's finding that the prosecutor did not intentionally force Petitioner into moving for a mistrial by failing to disclose statements from the victim's husband.  <u>Id.</u>  The court noted that the record showed the prosecutor was at most careless or negligent, and that the prosecutor had called the victim's husband to testify in open court regarding the same subject matter contained in the pretrial interviews.  <u>Id.</u>  The court also rejected Petitioner's claim that the prosecutor goaded him into seeking a mistrial, noting that the prosecution had much to lose and nothing to gain by a mistrial.  <u>Id.</u>  As the trial court stated in granting the mistrial, "The fact of

the matter is that the Court is satisfied that there was no advantage to the State to goad the defense into moving for a mistrial.  It was a compellingly strong case and the State was within a matter of a few hours of resting its case."  (Doc. No. 70, Ex. 90.)

Here, with respect to the trial court's factual finding that the prosecutor did not intend to force or goad a mistrial, Petitioner has not shown that the decision was based on an unreasonable determination of the facts.  The Court must presume the state court's factual determination to be correct, and Petitioner has offered no evidence to rebut the presumption.  Nor has Petitioner demonstrated that the state court's decision was contrary to or an unreasonable application of clear federal precedent.  In <u>Oregon v. Kennedy</u>, the Supreme Court said:

> Prosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion, therefore, does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause. . . .  Only where the governmental conduct in question is intended to "goad" the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion.

456 U.S. 667, 675-76 (1982).  Because the factual finding that the Government did not intend to provoke Petitioner into moving for a mistrial stands, the Double Jeopardy Clause did not bar the second trial.

### K.     Whether Petitioner Was Denied Due Process at the Identification Procedure

In ground thirty of the amended petition, Petitioner argues that he was denied due process at a show-up identification because the procedure created a substantial likelihood of misidentification and was unnecessarily suggestive.  Petitioner presented this argument to the Minnesota Court of Appeals, which disagreed with trial court's conclusion that the identification procedure was not unnecessarily suggestive, but found the identification nonetheless reliable

under the totality of the circumstances.  Kohser, 2001 WL 969024, at **3-4.  The appellate court

examined five factors to determine the reliability of the procedure:

> (1) the witness's opportunity to view the person when the crime occurred, (2) the
> witness's degree of attention, (3) the accuracy of the witness's prior description of
> the criminal, (4) the level of certainty the witness demonstrated when identifying
> the person, and (5) the time elapsed between the crime and the identification.

Id. at *2 (citing State v. Ostrem, 535 N.W.2d 916, 921 (Minn. 1995)).

The standard employed in federal court is virtually the same as that applied on

Petitioner's appeal.  Initially, a court must determine if the identification procedure was

impermissibly suggestive.  United States v. Williams, 340 F.3d 563, 567 (8th Cir. 2003) (citing

Simmons v. United States, 390 U.S. 377, 384 (1968)).  If it was, the court must "examine the

totality of the circumstances to determine whether the suggestive procedures created 'a very

substantial likelihood of irreparable misidentification.'"  Id. (citing Simmons, 390 U.S. at 384).

The second part of the test requires a balancing of five factors: "the opportunity of the witness to

view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his

prior description of the criminal, the level of certainty demonstrated at the confrontation, and the

time between the crime and the confrontation."  Id. (citing Manson v. Braithwaite, 432 U.S. 98,

114 (1977)).

Because the state appellate court found that the identification procedure was

impermissibly suggestive, the Court will proceed to the second part of the test.  The Court will

presume the correctness of any relevant factual determinations unless Petitioner rebuts such

presumptions by clear and convincing evidence.  First, the victim, Mrs. Johnson, had three

opportunities to see Petitioner during the commission of the crime: by the front door, in the

basement, and on the stairs.  Kohser, 2001 WL 969024, at *3.  Even if she did not see his face,

33

she saw other descriptive features sufficient to establish that her identification was reliable.  Id.

Specifically, Mrs. Johnson described the intruder as "a tall, slim, younger white man wearing a

dark stocking cap, blue jeans, and a blue-jean jacket.  Kohser fit that description exactly."  Id.

Second, although Mrs. Johnson was surprised and stressed by the situation, her degree of

attention was sound.  Id.  She was able to give the police a complete description of Petitioner that

permitted them to identify him as a suspect.  Id.  Third, Mrs. Johnson described Petitioner

accurately: as a tall, slim, younger white man wearing jeans, a jean jacket, and a dark stocking

cap.  Id.  Fourth, Mrs. Johnson's identification of Petitioner at the show-up procedure was

certain.  When she saw Petitioner in her front yard, she said instantly and unreservedly that he

was the person who broke into her home.  Id.  Finally, only twenty minutes passed between the

burglary and the identification.  Id. at *4.  Petitioner offers no evidence, much less clear and

convincing evidence, to rebut any of these findings.  In addition, the Court concludes that the

state court's determination that the identification procedure was reliable was neither

unreasonable nor contrary to law.

## III.     RECOMMENDATION

Based upon all of the files, records, and proceedings herein, **IT IS HEREBY**

**RECOMMENDED** that Petitioner's Application for Habeas Corpus Relief under 28 U.S.C.

§ 2254 (Doc. No. 47) be **DENIED**.


Dated: May 15, 2008

 s/ Susan Richard Nelson       
SUSAN RICHARD NELSON
United States Magistrate Judge


Pursuant to D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by

filing with the Clerk of Court, and serving all parties by **May 30, 2008**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within ten days after service thereof.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.